IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal Action No. **3:12-CR-054-L** |
| | § | |
| **PATRICIA AKAMNONU (5),** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Patricia Akamnonu's Motion to Revoke Magistrate's Detention Order and Request for a Hearing on the Same, filed March 27, 2012. The government did not file a response to Defendant's motion. In its order of April 5, 2012, the court denied Defendant's request for a *de novo* detention hearing. The court has conducted a *de novo* review of the magistrate judge's detention order and now issues its ruling. Having reviewed the motion, record, and applicable law, the court **denies** the Motion to Revoke Magistrate's Detention Order and Request for a Hearing on the Same.

   I.   **Factual and Procedural Background**

On February 23, 2012, the United States of America (the "government") filed a sealed Indictment charging Defendant Patricia Akamnonu ("Defendant" or "Akamnonu") with Conspiracy to Commit Health Care Fraud (Count One) and Health Care Fraud (Counts Five through Seven), in violation of 18 U.S.C. §§ 1347, 1349, and 2. The government filed its Motion for Detention on February 28, 2012, requesting the pretrial detention of Defendant because of a serious risk that she would flee. The government's motion presented a checklist of reasons for detention. The government checked the space to indicate that detention was

**Memorandum Opinion and Order –Page 1**

necessary to ensure Defendant's appearance as required and also checked the space to indicate that detention was necessary to ensure the safety of any other person or the community. After a detention hearing, held on March 2, 2012, Magistrate Judge Irma Carrillo Ramirez entered an order on March 3, 2012, granting the motion for detention and determining "there is no condition or combination of conditions of release which could be set which would reasonably assure Defendant's appearance at future court hearings." The magistrate judge ordered pretrial detention because she determined that Defendant was a flight risk based upon the large amount of money procured by Defendant that has not been accounted for and Defendant's ties to the country of Nigeria and ability to travel there.

Defendant requests that the court revoke the order of detention entered against her by the magistrate judge. Defendant argues in her motion that there are conditions of release that will reasonably assure her appearance at all future hearings in this case, and that will also assure the safety of the community.

## II. Legal Standard

"When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) (citations omitted). "Under the Bail Reform Act [the "Act"], a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of *either* the defendant's appearance or the safety of others or the community is sufficient; both are not required." *Fortna*, 769 F.2d at 249 (citations

omitted).  "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," a court must consider: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  "With respect to the quantum or character of proof, . . . the Act provides that the facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure *the safety* of any other person and the community shall be supported by clear and convincing evidence."  *Fortna*, 769 F.2d at 250 (quoting § 3142(f)) (internal quotation marks omitted).  In ascertaining whether risk of flight warrants detention, a preponderance of the evidence standard is used, and "the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance."  *Fortna*, 769 F.2d at 250 (citation omitted).

### III. Analysis

The court now turns to the section 3142(g) analysis.  With respect to the first section 3142(g) factor, the "nature and circumstances of the offense charged," Defendant is charged with one count of Conspiracy to Commit Health Care Fraud (Count One) and three counts of Health Care Fraud (Counts Five through Seven).  The court observes that Defendant is not charged with an offense generally considered to be dangerous or an offense enumerated in section 3142(g)(1), that is, a crime of violence; a violation involving sex trafficking of children; a federal crime of terrorism; or an offense involving a minor victim or a controlled substance, firearm, explosive, or destructive device.  Pursuant to 18 U.S.C. §§ 1347 and 1349, Defendant's alleged violations

**Memorandum Opinion and Order –Page 3**

carry a maximum sentence of imprisonment of ten years for each count. Thus, if convicted, Defendant faces a lengthy prison sentence, which presents a motive to flee. This factor weighs in favor of detention. *See United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009), *aff'd*, 341 F. App'x 979 (5th Cir. 2009) (finding that the severity of the defendant's potential term of imprisonment weighed in favor of detention).

With respect to the second section 3142(g) factor, "the weight of the evidence against the person," courts have found this factor to be of least importance in the detention determination. *Stanford*, 630 F. Supp. 2d at 755 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F. Supp. 385, 393 (W.D. La. 1997)). While the government has made a modest showing of the evidence supporting the four counts with which Akamnonu has been charged, the government has convincingly demonstrated that much of the money procured by her from the Medicare and Medicaid programs remains unaccounted. *See Stanford*, 341 F. App'x at 982 ("Beyond the evidence supporting the twenty-one counts of the indictment, at the detention hearing, the Government also presented evidence that Stanford maintained a secret Swiss bank account, had withdrawn $100 million from this account in late 2008 while the SEC was investigating SFG, and much of the investors' money entrusted to Stanford remains unaccounted.")

According to the Indictment, Defendant and her husband owned and operated a home healthcare agency named Ultimate Care Home Health Services, Inc. ("Ultimate") whose patients were certified for home healthcare services by Dr. Jacques Roy or a related physician, and submitted fraudulent claims to Medicare for home health services that were not medically necessary. At the hearing, the government's witness, Special Agent of the Federal Bureau of Investigation Chelsie Drews, testified that from 2006 to 2011, Ultimate received approximately

$21 million from Medicare and approximately $3 million from Medicaid. Det. Hr'g Tr. 10, March 2, 2012. At the time of indictment, the government was aware of at least twenty bank accounts held by Defendant and her husband at three banks. Det. Hr'g Tr. 18. Since indictment, the government has learned about several more bank accounts at two additional banks. *Id.* The government included ten bank accounts in the Indictment. Indictment 24; Det. Hr'g Tr. 19. Of those ten accounts, the government recovered approximately $17,000. *Id.*

The evidence presented by the government shows that Defendant's husband has presented varying pictures of their income and net worth during the same time frame. In Detention Hearing Exhibit 3, an application to obtain a Subway franchise found in the business offices of Ultimate and dated September 27, 2011, Cyprian Akamnonu (Defendant's husband) listed his income from current occupation as $65,000 per year, and income from other sources as $86,400 per year. Det. Hr'g Tr. 25. Cyprian Akamnonu's pretrial services report, however, indicates that he has not drawn a salary since September 2010, when he was investigated for health care fraud. Det. Hr'g Tr. 24. In Detention Hearing Exhibit 5, in a financing application through an entity called the Funding Edge, dated March 21, 2011, Cyprian Akamnonu listed his total assets as $1.2 million, total liabilities as $800,000, and total household income as $400,000. Det. Hr'g Tr. 23-24. In Detention Hearing Exhibit 6, a financial statement for an entity called Cyprian, Inc., dated April 29, 2011, Cyprian Akamnonu listed his total assets as $3.5 million, and total liabilities as $2.3 million. Det. Hr'g Tr. 24-25.

At the time of indictment, the government ascertained that Patricia and Cyprian Akamnonu owned approximately 23 properties, 18 of which were residential properties and 17 of which were owned "free and clear." Det. Hr'g Tr. 26-27. The majority of the residential properties served as rental properties. Det. Hr'g Tr. 27. Agent Drews testified that all of the

properties it discovered belong to both Cyprian Akamnonu and Patricia Akamnonu. Det. Hr'g Tr. 32. Agent Drews also testified that when considering all of the property discovered by the government by the time of indictment, the Akamnonus paid approximately $2.5 million for those properties. Det. Hr'g Tr. 32. Considering the $24 million received by Defendant Akamnonu and her husband from Medicare and Medicaid through their home health agency, Ultimate, and the properties and monies seized by the government, the court finds that there is a large amount of money that remains unaccounted. The court believes the government has met it burden in demonstrating the weight of the evidence against Defendant and finds that this factor weighs in favor of Defendant Akamnonu's detention.

In considering the third section 3142(g) factor, "the history and characteristics of the person," a court looks to available information regarding "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The court has previously detailed Defendant's inconsistent financial history as reflected in different documents, evidencing a character of dishonesty. In addition, the large amount of money that remains accounted indicates that Defendant likely has the means to flee.

The evidence presented at the hearing shows that Defendant is a naturalized United States Citizen. She was born in Nigeria and came to the United States in 1992. Det. Hr'g Tr. 7. Between 2005 and 2011, Defendant and her husband sent approximately $100,000 to relatives in Nigeria, some of which was sent to Defendant's mother who now resides in the Dallas area. Det. Hr'g Tr. 7. Defendant has a United States passport and Nigerian passport. The evidence presented at the hearing also shows that Akamnonu has traveled outside of the United States

three times since 2006, and at least one of those trips was to Nigeria. Det. Hr'g Tr. 9. Defendant's motion lists three instances in which she has traveled to Nigeria since 2006. According to her motion, Defendant has four children, ages 18, 17, 15, and 14, and a 67-year-old mother, all residing in the Dallas area. The government's witness testified that the United States would not be notified if Defendant applied for and received another Nigerian passport. Det. Hr'g Tr. 9-10. Defendant has no criminal history. Although Defendant is a United States citizen and has close ties to family in the United States, the court determines that Akamnonu also has substantial ties to Nigeria, has traveled there recently, and sent money there recently. Defendant's ties to Nigeria coupled with her financial resources tip the scales in favor of detention with respect to this factor.

The fourth section 3142(g) factor, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," has been considered by courts in the flight risk analysis. *See Stanford*, 341 F. App'x at 983 (observing that in ascertaining whether risk of flight warrants detention, "neither party argue[d] that the fourth § 3142(g) factor, 'the nature and seriousness of the danger to any person or the community that would be posed by the person's release,' is applicable to Stanford, [and] the district court made no findings of fact with respect to this element.") Agent Drews testified that she believed Patricia Akamnonu is a danger and financial harm to the community. Det. Hr'g Tr. 39. Based on the evidence in the record, the court does not believe the government has met its burden with respect to this factor. The court also does not believe that the government has met the higher clear and convincing standard in demonstrating "that no condition or combination of conditions will reasonably assure *the safety* of any other person and the community." *See Fortna*, 769 F.2d at 250 (quoting §

3142(f)) (requiring a showing by clear and convincing evidence) (internal quotation marks omitted).

Defendant has the motive and likely has the means to flee. The potential of a long sentence of imprisonment and Defendant's family ties, transfers of money, and recent travel to Nigeria weigh in favor of Defendant's detention, notwithstanding her family ties in Texas and absence of criminal history. Further, the evidence shows that Akamnonu is responsible for a large amount of money that remains unaccounted, and the United States would not be notified if she applied for another Nigerian passport. The totality of the factors considered above tips the scales in favor of detention. The court has also considered other factors, such as the length of the detention that may occur in the future and the complexity of the case. The court, nevertheless, determines that the government has shown by a preponderance of the evidence that Defendant poses a flight risk and that it is more likely than not that there is no condition or combination of conditions of release that could be set that would reasonably assure the appearance of Defendant Patricia Akamnonu as required.

## IV. Conclusion

For the reason herein stated, the court **denies** Defendant Patricia Akamnonu's Motion to Revoke Magistrate's Detention Order and Request for a Hearing on the Same, filed March 27, 2012.

**It is so ordered** this 27th day of April, 2012.

Sam A. Lindsay
United States District Judge